c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **GLADYS THOMASON,** Plaintiff | **CIVIL ACTION NO. 1:17-CV-01541** |
| **VERSUS** | **UNASSIGNED DISTRICT JUDGE** |
| **OUTBACK STEAKHOUSE OF FLORIDA, L.L.C.,** *ET AL.*, Defendants | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATIONS

Before the Court is a Motion for Summary Judgment (Doc. 15) filed by Defendants Outback Steakhouse of Florida, L.L.C. ("Outback") and Bloomin' Brands, Inc. ("Bloomin' Brands") (collectively "Defendants"). Plaintiff Gladys Thomason ("Thomason") opposes the motion. (Doc. 27). Defendants replied. (Doc. (Doc. 28). Defendants' Motion for Summary Judgment (Doc. 15) should be GRANTED because there is no genuine issue of material fact that Defendants had actual or constructive notice of an unreasonably hazardous condition that existed for some period of time that it would have been discovered had Defendants exercised reasonable care.

## I.    Background

On June 21, 2017, Thomason filed a petition for damages in the Ninth Judicial District Court, Rapides Parish, Louisiana. (Doc. 1-2). Thomason claims personal injuries resulting from a slip and fall on August 10, 2016 at Outback in Alexandria, Louisiana. (Doc. 1-2). Thomason alleges she slipped on an unknown substance next to her table. (Doc. 1-1). Thomason claims patrons dining with her saw their waitress

1

continually look at the floor and walk around the area prior to Thomason slipping on the substance. (Doc. 1-2). Thomason asserts Outback was negligent by failing to implement adequate cleaning procedures, failing to recognize and timely clean the area, failing to place warning signs, failing to warn customers of the existence of the affected area, and failing to periodically inspect the area for unreasonably dangerous conditions. (Doc. 1-2). Thomason seeks compensatory damages, legal interest, and costs. (Doc. 1-2). Defendants answered, asserting various affirmative defenses. (Doc. 1-3).

Upon receiving Thomason's answers to discovery in which Thomason admitted the amount in controversy exceeds $75,000.00, Defendants removed the action invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Docs. 1, 1-6).[1]

---

[1] Title 28 U.S.C. § 1332(a) provides that the district courts have original jurisdiction of all civil actions upon a showing of: (1) diversity of citizenship between the parties; and (2) an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008) (citing Harrison v. Prather, 404 F.2d 267, 272 (5th Cir. 1968)) (internal citation and quotation omitted). The citizenship of an individual is his or her domicile, meaning the place where an individual resides and intends to remain. See Acridge v. Evangelical Lutheran Good Samaritan Soc., 334 F.3d 444, 448 (5th Cir. 2003). A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. See Tewari De-Ox Systems, Inc. v. Mountain States/Rosen, L.L.C., 757 F.3d 481, 483 (5th Cir. 2014). The citizenship of a limited liability company ("L.L.C."), a limited partnership, or another unincorporated association or entity is determined by the citizenship of all its members. See Harvey, 542 F.3d at 1079-80.

Thomason is a citizen of Louisiana, as she is domiciled in Rapides Parish, Louisiana. (Doc. 1). Outback is a Florida L.L.C. (Doc. 1). Outback's sole member is OSI Restaurant Partners, L.L.C. ("OSI"), a Delaware L.L.C. (Doc. 1). OSI's sole member is OSI Hold Co., Inc. ("OSI Hold Co."), a Delaware corporation with its principal place of business in Florida. Thus, Outback is a citizen of Florida and Delaware. Bloomin' Brands is a citizen of Delaware and Florida, as it is a Delaware corporation with its principal place of business in Florida. (Doc. 1).

Defendants now seek summary judgment and dismissal with prejudice of all of Thomason's claims against Defendants, at Thomason's cost. (Doc. 15). Defendants maintain that Thomason cannot meet any of the elements of her burden of proof under La. R.S. 9:2800.6. (Doc. 15-2). In support, Defendants attach portions of Thomason's deposition transcript (Doc. 15-3), portions of her husband C.G. Thomason's ("C.G's") deposition transcript (Doc. 15-4), and a statement of material facts (Doc. 15-5).

Thomason opposes, asserting that genuine issues of material fact remain as to whether the substance on the floor presented an unreasonable risk of harm which was reasonably foreseeable, and whether Outback created or had actual or constructive notice of the foreign substance on the floor. (Doc. 27). Thomason attaches in support a statement of contested material facts (Doc. 27-1), the deposition transcript (Doc. 27-2) and affidavit (Doc. 27-3) of C.G., the deposition transcript of Thomason (Doc. 27-4), the deposition transcript of Outback manager Ryan Welch ("Welch") (Doc. 27-5), the incident report (Doc. 27-6), and the Rule 30(b)(6) deposition transcript of Defendants. (Doc. 27-7).

---

Thomason admitted in response to Defendants' Request for Admission of Facts that her claim has a value in excess of $75,000.00. (Doc. 1-6).

The Court finds it has diversity jurisdiction, because there is complete diversity among the adverse parties and the jurisdictional threshold has been met.

II.    <u>Law and Analysis</u>

A.    <u>Standards governing Motion for Summary Judgment</u>

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[2]

Substantive law determines what facts are "material." <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 248 (1986). A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id.</u> (citation omitted). However, the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Stewart v. Murphy</u>, 174 F.3d 530, 533 (5th Cir.), <u>cert. denied</u>, 528 U.S. 906 (1999) (internal citations omitted). "A genuine dispute of material fact exists 'if the evidence is such

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

that a reasonable jury could return a verdict for the nonmoving party.'" Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson, 477 U.S. at 248).

In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the nonmovant. Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then offer evidence sufficient to establish a genuine issue of material fact. Herrera v. Millsap, 862 F.2d 1157, 115 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992).

**B.    Thomason fails to establish a genuine issue of material fact that Defendants created or had actual or constructive notice under La. R.S. 9:2800.6.**

"In a diversity case such as this one, we apply state substantive law, here Louisiana law." Moore v. State Farm Fire & Cas. Co., 556 F.3d 264, 269 (5th Cir. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). Louisiana premises liability, as established under La. R.S. 9:2800.6, the "Merchant Liability Statute," provides, in part, that:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

La. R.S. 9:2800.6(A)-(C)(1).

Failure to prove the elements enumerated in the statute is fatal to the plaintiff's cause of action. White v. Wal-Mart Stores, Inc., 699 So. 2d 1081, 1086 (La. 1997) (overruling Welch v. Winn-Dixie Louisiana, Inc., 655 So.3d 309 (La. 1995)).[3]

---

[3] The Louisiana Supreme Court noted that Welch "allowed for a finding of constructive notice absent a showing that the condition existed for some period of time prior to the occurrence and which provided for a shifting of the burden to the defendant merchant to prove it exercised reasonable care." The Louisiana Supreme Court, overruling Welch, stated that La. R.S. 9:2900.6(b) clearly and unambiguously requires the claimant to prove each of its three subsections with no shifting of the burden, and requires the claimant to prove the damage-causing condition existed for some period of time prior to the occurrence in order to prove constructive notice. White, 699 So.2d at 1085.

The Louisiana Supreme Court, interpreting the definition of "constructive notice," found that the phrase "such a period of time" involves a temporal element that the plaintiff must prove. <u>White</u>, 699 So.2d at 1082. However, there is no "bright line" time period, and whether the condition existed for a sufficient period of time is a factual question. <u>Id.</u> The plaintiff must show some "positive evidence that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." <u>Id.</u> A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. <u>Id.</u> at 1084. "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." <u>Id.</u>

The following facts are undisputed:

(1) Thomason arrived at Outback, was seated in a booth near the bar by the hostess, ate dinner, and fell as she was leaving after her meal.

(2) After she fell, Thomason saw a stain on the floor near the booth where she was seated.

(3) C.G. did not see Thomason fall but he saw the stain on the floor near booth where she was seated.

(4) Thomason's shoes and clothes were not wet or stained after she fell at Outback.

(5) Thomason and C.G. did not see the stain on the floor near their booth until after Thomason fell.

(6) Thomason does not know how the stain was created.

(7) Thomason cannot identify the substance that caused the stain.

(8) Thomason does not know how long the stain was on the floor.

(Docs. 15-5, 27-1).

In their statement of material facts, Defendants assert that Outback is unaware of any alleged condition that caused Thomason's fall. (Doc. 15-5). Defendants argue Thomason fails to prove a condition existed which presented an unreasonable risk of harm which was reasonably foreseeable, and fails to prove Outback created, knew or should have known of the alleged stain on the floor on the area where she fell. (Doc. 15-2). Defendants further contend because Thomason cannot show Outback created or had actual notice, she must prove "constructive notice." (Doc. 15-2).

However, Thomason contends genuine issues of material fact remain as to whether there was an unreasonably dangerous condition on the floor; whether Outback's employees created the dangerous condition; whether Outback's employees had actual notice or constructive notice of the dangerous condition; whether Outback employees exercised reasonable care in maintaining the premises; and whether Welch exercised reasonable care in performing an adequate investigation, is a credible witness, and followed proper protocol to preserve pertinent evidence and identify witnesses. (Doc. 27-1).

Defendants show Thomason she did not see anything before she fell and was not looking down at the floor. (Doc. 15-3, p. 2/7).  She did not know what caused her fall. (Doc. 15-3, p. 3/7).  She testified that she immediately looked back and saw a circular, light-greenish stain on the floor. (Doc. 15-3, p. 3/7).  She stated it did not look wet.  (Doc. 15-3, p. 4/7). She did not know if the spot had any scrape or shoe marks through it. (Doc. 15-3, p. 4/7).  She did not know if the spot looked slippery to her at the time. (Doc. 15-3, p. 4/7).  However, she felt this circular, greenish stain was connected to her fall. (Doc. 15-3, p. 4/7).  Thomason did not know if the stain had an odor or was a liquid. (Doc. 15-3, p. 4/7).  She had no idea how the stain got on the floor. (Doc. 15-3, p. 4/7).

Thomason testified she did not know how big the stain was but felt it was approximately eight to ten inches. (Doc. 15-3, p. 5/7).  She did not touch the spot after she fell. (Doc. 15-3, p. 5/7). She did not have any stain on her shoe or clothes and was not wet after she fell. (Doc. 15-3, p. 5/7).  She did not know if the spot was greasy, stating she did not touch it. (Doc. 15-3, p. 5/7).  She also did not know if it looked greasy or was shiny. (Doc. 15-3, pp. 5-6/7). Thomason testified the spot was slick, which is why she slipped. (Doc. 15-3, p. 6/7).  She did not see her foot step on the green spot. (Doc. 15-3, p. 6/7). Thomason had no idea how long that spot was on the floor. (Doc. 15-3, p. 7/7).

Defendants also show C.G. testified that he did not notice anything on the floor on the way to be seated at the booth.  (Doc. 15-4, p. 2/5).  He testified the floor is typically slick, especially by the kitchen area. (Doc. 15-4, p. 2/5).  C.G. did not see the

9

spot until after Thomason fell. (Doc. 15-4, p. 3/5).  He saw bus people coming by and waitresses coming by, but his attention was on his wife. (Doc. 15-4, p. 3/5).  C.G. ran his fingers through the substance but did not smell it.  (Doc. 15-4, p. 3/5).  He testified it was a greasy substance like drawn butter or oil-based. (Doc. 15-4, p. 3/5).  He was not looking at Thomason when she fell.  (Doc. 15-4, p. 4/5).

In her original state court petition, Thomason alleges patrons dining with her saw their waitress continually look at the floor and walk around the area prior to Thomason slipping on the substance. (Doc. 1-2).  In her opposition, Thomason asserts Defendants' failure to adequately investigate the incident provides a basis for a charge of spoliation of evidence, entitling her to a presumption that evidence Outback failed to produce would have been unfavorable to Outback.  (Doc. 27).  Thomason argues Welch failed to conduct an adequate investigation and preserve pertinent evidence.  (Doc. 27).  Thomason asserts Outback took no photographs and spoke to no witnesses, including its own employees.

Thomason argues Outback was in complete control of the of the investigation and precluded C.G. from obtaining contact information from potential witnesses. (Doc. 27).  Thomason further asserts Outback had a policy of obtaining as much information as possible. (Doc. 27).  Thomason submits that the incident report (Doc. 27-6), received after Welch's deposition, reflects that it was relayed to Gallagher Bassett that alcohol was involved in the incident despite no evidence that she was intoxicated and no investigation by Welch. (Doc. 27). Thomason asserts that this, combined with C.G.'s testimony that Welch escorted him out and prevented him

obtaining witnesses, provide the basis for spoliation. (Doc. 27). Thomason contends that because a genuine issue of material fact remains as to Welch's credibility, genuine issues of material fact also exist as to whether an unreasonably dangerous condition existed on the floor. (Doc. 27).

Spoliation of evidence refers to an "intentional destruction of evidence for purposes of depriving opposing parties of its use." Desselle v. Jefferson Parish Hospital District No. 2 D/B/A East Jefferson General Hospital, 887 So.2d 524, 534 (La. App. 5 Cir. 10/12/04). Allegations of negligent conduct are insufficient to establish a claim for spoliation of evidence. Batiste v. United Fire & Cas. Co., 241 So.3d 491, 502 (La. App. 5 Cir. 3/14/18) (citing Barthel v. State, Department of Transportation and Development, 917 So.2d 15, 20 (La. App. 1 Cir. 6/10/05)); see also Reynolds v. Bordelon, 172 So.3d 589, 592 (La. 2015); Burge v. St. Tammany Parish, 336 F.3d 363 (5th Cir. 2003).

Here, Thomason is not asserting a tort or claim of spoliation of evidence, but rather is invoking an adverse presumption of evidence. (Doc. 27). "Federal courts apply state substantive law in diversity jurisdiction cases, but apply federal procedural law." DP Solutions, Inc. v. Rollins, Inc., 353 F.3d 421, 427 (5th Cir. 2003); see also Fed. R. Civ. P. 1. Federal courts "apply federal evidentiary rules rather than state spoliation laws in diversity suits." Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 203 (5th Cir. 2005). "Evidentiary 'presumptions' which merely permit an adverse inference based on unproduced evidence are, likewise, controlled by federal law." King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003).

"An adverse inference based on the destruction of potential evidence is predicated on the 'bad conduct' of the defendant." Id. (quoting United States v. Wise, 221 F.3d 140, 156 (5th Cir. 2000)). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." Guzman v. Jones, 804 F.3d 707, 713 (5th Cir. 2015). Thus, Thomason must show that Defendants acted in "bad faith" to establish she is entitled to an adverse inference. See Condrey, 431 F.3d at 203.

Here, Welch testified he remembers that Thomason fell next to table 43 in the bar area. (Doc. 27-5, p. 46/161). However, he did not witness the fall. (Doc. 27-5, p. 46/161). Welch testified it is everyone's job to make sure the floors are clean, but he does not have a set number of times they clean the floor. (Doc. 27-5, p. 49/161). Welch testified Outback does not have documentation that the floors are kept clean and he has not been told by Outback to keep logs. (Doc. 27-5, p. 50/161). Welch stated that if employees see food on the floor, they are required to pick it up or clean it up immediately. (Doc. 27-5, p. 53/161). All employees that walk through the bar area are responsible for checking the floors, same as with the whole restaurant. (Doc. 27-5, p. 60/161).

Regarding when a customer falls, Welch was trained to make sure that a customer is okay, get their information, and see if they need medical assistance. (Doc. 27-5, p. 60/161). Welch testified that when Thomason slipped and fell, he went and checked the area that evening. (Doc. 27-5, p. 61/161). By the time he got there, C.G. had already brought Thomason to the car. (Doc. 27-5, pp. 60-61/161). Welch stated

he talked to C.G., found out what happened, and checked the area. (Doc. 27-5, p. 61/161). Welch obtained C.G.'s information, then went and spoke to Thomason to make sure she was okay. (Doc. 27-5, p. 61/161). Welch testified he asked if Thomason needed medical help and they refused. (Doc. 27-5, p. 61/161). Welch went back in the restaurant and called the incident in to Gallagher Bassett. (Doc. 27-5, p. 61/161). Welch testified a poster in the office says to call Gallagher Basset any time anything happens at the restaurant. (Doc. 27-5, p. 61/161).

Welch testified he told Gallagher Bassett what happened and that was it, which is all that Outback requires him to do. (Doc. 27-5, p. 62/161). Welch testified if an employee sees a fall, they are to come get him immediately or send someone to get him. (Doc. 27-5, p. 63/161). Welch stated he is not required to write up any report or take any pictures. (Doc. 27-5, pp. 63-64/161). He is not required to get statements or names and contact information from any witnesses, if there are any. (Doc. 27-5, pp. 64-65/161). However, he stated it would be common sense to get the information. (Doc. 27-5, p. 65/161). Welch testified it is reasonable to obtain witness statements and contact information and is important for the safety of the person. (Doc. 27-5, p. 67/161).

Welch stated that when Thomason fell, he was making his rounds and was in the kitchen heading towards the right side of the restaurant. (Doc. 27-5, p. 76/161). A server immediately came and told him Thomason fell, but he could not state who that server was or whether it was a male or female employee. (Doc. 27-5, p. 77/161).

13

Welch testified he immediately went to table 43 to see what happened, and C.G. had already moved Thomason to their car. (Doc. 27-5, pp. 77-78/161).

Welch testified he spoke to Thomason through the window while she was inside her car to see if she was okay. (Doc. 27-5, p. 78/161).  C.G. was standing next to him. (Doc. 27-5, p. 78/161).  Welch testified he was not sure if either C.G. or Thomason had been drinking that evening. (Doc. 27-5, p. 78/161).  Welch testified he did not know why Thomason fell.  (Doc. 27-5, p. 79/161).  Welch testified he followed all of Outback's policies and procedures in place regarding cleaning the restaurant. (Doc. 27-5, p. 82/161).  Welch testified he followed all safety policies and procedures in place for how to handle a situation when a customer was injured. (Doc. 27-5, p. 82/161).

Welch testified he did investigate before going out to speak to Thomason, but there was nothing on the floor. (Doc. 27-5, pp. 83-86/161). Welch testified he would have taken a picture if there was something on the floor. (Doc. 27-5, p. 83/161).  Welch testified he also scanned the entire area for any debris or anything on the floor. (Doc. 27-5, p. 87/161).  No one told him Thomason was intoxicated, and he could not really see Thomason through her window, which she had cracked. (Doc. 27-5, p. 88/161). Welch testified no written report was required from him, and he took C.G.'s statement of what happened and called it in. (Doc. 27-5, p. 89/161). Welch testified he did not take a picture because there was nothing to take a picture of. (Doc. 27-5, p. 89/161). Welch testified he gave C.G. the phone number to Gallagher Bassett because he asked for it. (Doc. 27-5, p. 101/161).

Welch further stated that when he met with C.G., he was standing at table 45 and pointed to the spot where Thomason fell. (Doc. 27-5, p. 102-103/161). Welch testified there was nothing there. (Doc. 27-5, p. 103/161). Welch stated he did not "escort" C.G. out of the restaurant back to his car but walked with him to the car to make sure his wife was okay. (Doc. 27-5, pp. 103-104/161). Welch testified he did not see a substance. (Doc. 27-5, p. 117). Welch testified he did not ask any of the employees if they had cleaned to floor before he got there and does not know that they did not clean it. (Doc. 27-5, p. 118/161).

Thomason asserts there is a genuine issue of material fact as to the credibility of Welch. However, Thomason has not shown Welch's actions constituted a willful loss or destruction of evidence, such as to warrant a finding of spoliation. Thomason has not shown she is entitled to an adverse presumption against Defendants.

Because neither Thomason nor C.G. saw the substance on the floor prior to the fall, and because no evidence establishes Outback created or had actual notice of the substance on the floor, Thomason must establish Outback had "constructive notice" of the condition prior her fall. To survive summary judgment, Thomason must show positive evidence that the condition existed for "some period of time" prior to her fall. White, 699 So.2d at 1082. However, "[t]he presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." La. R.S. 9:2800.6(C)(1). In some cases, circumstantial evidence may raise a factual issue regarding constructive notice

sufficient to defeat summary judgment.  See e.g. Tuminello v. Petco Animal Supplies Stores, Inc., 2011 WL 4551170 (E.D. La. 2011).

Thomason asserts "circumstantial evidence" shows a factual dispute as to whether the condition existed for some period of time.  (Doc. 27).  The circumstantial evidence Thomason points to is C.G.'s testimony that he personally observed the substance after Thomason's fall, that generally Outback serves food items that include oil or butter-based oils or dressings, and that he observed numerous waitresses and bus boys traversing the area, including one waitress who knelt to do something on the floor at that spot. (Doc. 27).

Defendants argue Thomason has not provided any evidence to show how long the stain existed before she fell or that the amount of time was sufficient for Outback to discover it through the exercise of reasonable care. (Doc. 15-2). Defendants assert Thomason's case is factually similar to Richard, 123 So.3d 345. (Doc. 15-2). In Richard, the plaintiff slipped on an unknown substance at a Popeye's restaurant. 123 So.3d at 346.  The Louisiana Third Circuit Court of Appeal affirmed the trial court's granting of summary judgment that Richard failed to prove actual or constructive notice.  Id. There, after ordering and receiving their food, the plaintiff began to leave the restaurant, attempted to stop and ask her friend a question, and her feet "just never stopped" and she fell. Id.

Richard did not know what she slipped on, did not feel to see if there was anything slippery on the floor, and did not look to see if stains were on her clothing. Id.  Richard did not see anyone spill anything on the floor, did not see any slippery

16

liquid or substance on her shoes after she fell, and denied "feeling around" to see if there was anything on the floor. Id. at 348. Richard asserted that if Popeye's did not cause the defective condition, there was circumstantial evidence that they had constructive notice of the defect. Id. The court noted that, even after she fell, Richard was unable to identify the substance that made her fall and her contentions were not dispositive of how long any alleged dangerous substance had been on the floor. Id. at 349.

Thomason asserts Richard is distinguishable because, unlike Richard, Thomason has produced evidence of the likely spilling event – the waitress who knelt on the floor at the exact spot approximately 30 minutes before her fall. (Doc. 27). Thomason further contends she has produced evidence that for at least 30 minutes of being there, wait staff took affirmative steps to avoid stepping on the substance. (Doc. 27).

However, Thomason's evidence amounts to speculation regarding why the Outback waitress was bending down and why Outback employees may have changed their gait, gingerly walked around, or avoided the area of the fall. See Babin v. Winn-Dixie La., Inc., 764 So.2d 37, 40-41 (La. 2000) ("Plaintiff was unable to produce any factual support for his contention that the toothpick boxes were on the floor for some period of time before his fall. The court of appeal speculated that plaintiff could show there was a possibility the boxes had been on the floor for some period of time, and that Winn-Dixie's employee was negligent in failing to observe them. However, such speculation falls far short of the factual support required to establish that plaintiff

will be able to satisfy his evidentiary burden of proof at trial.").  Neither Thomason nor C.G. saw the stain, substance, or spot before Thomason fell and could not say how long it had been there.  C.G. testified he could not see what the waitress was doing due to the high table obstructing his view of the floor.  (Doc. 27-2, pp. 10-11/26).

C.G. attests via sworn affidavit that throughout the hour, while dining in Outback, he saw multiple employees intentionally walk around an area of the floor located in front of a table close to theirs. (Doc. 27-3).  He saw an employee stoop down in the area as if they had dropped something or were inspecting the floor. (Doc. 27-3). C.G. stated these actions made it clear to him that something was on the floor that should not be there and that Outback employees knew something was on the floor that should not be there. (Doc. 27-3).  He attested he personally saw the substance after she fell, and he knelt and touched it. (Doc. 27-3). He stated it was a slick, greasy substance. (Doc. 27-3).

C.G. testified he did not see what the employee was stooping down or bending down to do. (Doc. 27-2, pp. 10-11/26).  But, through his affidavit, C.G. stated he knows it is the substance Thomason slipped on because he saw nothing else on the floor when he examined the floor and personally observed the substance on the floor after the fall. (Doc. 27-3). He also attested the substance he found after Thomason's fall was in the exact place Outback employees were avoiding by walking around it and where the Outback employee knelt.  (Doc. 27-3).

Viewing the evidence in the light most favorable to Thomason, evidence shows C.G. saw a waitress bend down in the vicinity of where Thomason fell, and evidence

shows C.G. noticed Outback employees gingerly walking around the area. However, C.G. was unable to say what the waitress was doing when she bent down, and neither C.G. nor Thomason saw the stain, substance, or spot before Thomason fell. Rather, Thomason seeks to have the Court infer constructive notice based on the fact that C.G. saw a waitress bend down in the area and saw Outback employees gingerly walking through the area before Thomason's fall.

"[M]ere speculation or suggestion is not enough to meet the stringent burden of proof imposed upon a plaintiff by La. R.S. 9:2800.6." Allen v. Wal-Mart Stores, Inc., 850 So.2d 895, 898 (La. App. 2 Cir. 2003) (citing Robinson v. Brookshires # 26, 769 So.2d 639 (La. App. 2 Cir. 2000)); see also Richard v. Liberty Mutual Ins. Co., 123 So.3d 345, 349 (La. App. 3 Cir. 2013) ("Mere conclusory allegations, improbable inferences and unsupported speculation will not support a finding of a genuine issue of material fact.") (citing Sears v. Home Depot, USA, 943 So.2d 1219, 1228 (La. App. 4 Cir. 2006)). While Thomason has shown a genuine issue of material fact of the existence of the substance on the floor, C.G.'s attestations as to the reason for the waitress bending down to the floor or employees walking around an area amount to mere speculation.

Thomason also submits the Rule 30(b)(6) deposition of Defendants. (Doc. 27-7). Jean Mouton ("Mouton") testified that Outback does not know how many Outback employees walked by Thomason's table that night. (Doc. 27-7, p. 19/39). Mouton stated that had an employee directly avoided or ignored a foreign substance, it would be a violation of their policy. (Doc. 27-7, p. 15,24/39). Thomason asserts that C.G.'s

affidavit and testimony taken as true, combined with the testimony of Mouton that avoiding the substance on the floor would be a violation of policies and procedures, establish a genuine issue of material fact as to whether Outback personnel exercised reasonable care in dealing with an unreasonably dangerous condition on the floor. (Doc. 27). However, the Louisiana Supreme Court has rejected the position that a finding of constructive notice can be based on "a lack of uniform, mandatory clean-up procedures." White, 699 So.2d at 1085-86.

Mouton testified that Welch followed all necessary policies and procedures and gathered the necessary initial information for Gallagher Bassett. (Doc. 27-7, pp. 18-19/39). Mouton testified Outback relies on Gallagher Bassett for their expertise and assumes Gallagher Bassett gathered all the necessary information it needed from Welch. (Doc. 27-7, p. 18/39). Outback relied on the statement that Welch found nothing on the floor. (Doc. 27-7, p. 21/39). Mouton stated Outback agrees it would be appropriate to ask if other employees saw what happened. (Doc. 27-7, p. 14/39). Welch was not required to take pictures of an item or lack of an item on the floor. (Doc. 27-7, p. 16/39). Outback does not require any of its employees to get statements or names and contact information from eyewitnesses who are customers. (Doc. 27-7, p. 16/39).

Thomason has failed to offer positive evidence that any substance "existed for some period of time prior to her fall such that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). Moreover, "[t]he presence of an employee of the merchant in the vicinity in which the condition exists

does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." Id. Defendants are not required to prove that it acted reasonably or that its employees did not see the hazard. White, 699 So.2d at 1085-87. Rather, Thomason must prove all three subsections of La. R.S. 9:2800.6 without any shifting of the burden. Id. Upon consideration of the evidence, Thomason has failed to establish a genuine issue of material fact that Defendants had actual or constructive notice. Accordingly, summary judgment is appropriate.

## III. <u>Conclusion</u>

Because there is no genuine issue of material fact that Defendants had actual or constructive notice of an unreasonably hazardous condition that existed for some period of time that it would have been discovered had Defendants exercised reasonable care,

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 15) be GRANTED, and that Thomason's claims be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of

the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

**THUS DONE AND SIGNED** in chambers in Alexandria, Louisiana, this ____14th____ day of May, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge

22